## Patterson, Trustee, *v.* Warwick et al., Appellants.

426

Argued April 13, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*Andrew J. Waychoff, Jr.,* for appellants.

*John E. Baily,* with him *Montgomery, Thompson & Baily,* for appellee.

Opinion by ARNOLD, J., September 27, 1949:

This was an action brought to quiet title to real estate purchased at tax sale by the plaintiff trustee, for whom the court below gave judgment. The petition was filed December 14, 1946. The defendants are the heirs of Delia Porter, who had owned the house and lot in question in the Borough of Waynesburg, which we will call the homestead.

Patterson, the plaintiff, an attorney at law, became a trustee for interests created by the will of Thomas Hughes. Under this trust Fannie Crawford, the daughter of Hughes, had a life interest, and the remainder went to the children of her and her husband, Carl Crawford, also an attorney at law.

Acting under authority granted by the orphans' court, Patterson, Trustee, lent $900 of the trust res to C. H. Sowers and Anna S. Herold (two of the heirs of Delia Porter). The loan was secured by a judgment

which was a first lien on an undivided two-thirds interest in the real estate involved here. In addition to the homestead, the judgment was a first lien on an undivided interest in a house and lot, and on an undivided two-thirds of the lessor's interest in certain oil and gas; and a second lien upon a lot with three dwellings.

Under circumstances hereinafter related, taxes on the Delia Porter homestead from 1931 to 1936 were not paid, and the county treasurer made a report and return to the court[1] that this property had been sold on *November 23, 1936*,[2] to the County of Greene. The treasurer's report was filed on March 1, 1937, to No. 2 June Term, 1937, and confirmed absolutely on May 1, 1937; whereupon the treasurer, on June 17, 1937, gave his deed to the county for the premises.

Under the statutes the real estate was subject to redemption not only within five years[3] (expiring November 23, 1941), but at any time thereafter prior to a sale of the premises by the county.[4] Therefore under the report of sale confirmed by the court, and under the deed given to the county, the heirs of Delia Porter could not irrevocably lose their property until November 23, 1941, at the earliest; and thereafter the right of redemption existed until sold by the county, and if sold they could bid.

The tax sale divested the lien of the judgment of Patterson, Trustee,[5] for which he could be surcharged if thereby the trust estate incurred a loss.

On May 24, 1939, more than two years after the treasurer's sale, the county treasurer presented a peti-

---

[1] As required by §12 of the Act of 1931, P. L. 280, as amended, 72 PS §59711.

[2] N. T. 88.

[3] Section 15 of the Act of 1931, P. L. 280, as amended, 72 PS §5971o.

[4] See the Act of 1935, P. L. 1091, 72 PS §5879; the Act of 1933, P. L. 1018, as amended, 72 PS §5876.

[5] Section 9 of the Act of 1931, P. L. 280, as amended, 72 PS §59711.

tion to the court of common pleas, averring that at a tax sale held on *November 19, 1936*,[6] he "did at that time knock down the [Delia Porter property] to Edward R. Patterson, Trustee of Fannie H. Crawford . . . for . . . ($146.41) . . . and costs; . . ." and "that through some inadvertence the sale . . . was returned as . . . [having been made] to the County of Greene. . . ." It further averred that the county treasurer made a deed to the County of Greene on June 17, 1937, and acknowledged the same in open court, and that the deed should have been made to Edward R. Patterson, Trustee. The prayer was for *an order of court directing and authorizing the county treasurer to execute and file a new deed to Patterson, Trustee.* Such an order was made eo instante (by the trial judge's predecessor in office). Not only was this order made without testimony or notice to those interested in the land, but neither the petition nor order sought to amend the report of the county treasurer, confirmed absolutely, that he had sold the premises to the County of Greene; nor was it averred that Patterson, Trustee, had paid the bid which allegedly he made in November, 1936. Apparently such bid was never paid until after the order of court directing execution of the new deed. It is questionable whether he could thus attain a right of election to take up his bid or drop it on the county at any time at his sole determination.

The petition did not set forth anything concerning the "inadvertence" which caused the treasurer to report to the court that the property had been sold to the County of Greene; nor why he had made a deed to the county therefor; nor what the county treasurer's books showed as to the bidder. The averments were entirely consistent with Patterson having bid in the property for taxes and costs on November 19, 1936, but having failed to pay his bid by November 23, that the sale was marked

---

[6] Original petition.

as being to the County of Greene,—which would have been the proper way for the treasurer to have acted when the bid was not paid. See §10 of the Act of 1931, P. L. 280, as amended, 72 PS §5971j. On the same day that the order was made the county treasurer presented to the court and acknowledged a tax deed to Patterson, Trustee, reciting that the Porter homestead had been sold to him on *June 17, 1936*,[7] for a bid which amounted to taxes, interest and costs. The petition and order of court were filed to No. 8 June Term, 1939, whereas the treasurer's report and return of the tax sale was filed to No. 2 June Term, 1937.

Though the treasurer's report of sale, which had been confirmed absolutely, had not been amended, through some unexplained method a notation was made on the treasurer's report: "See petition & order filed May 24, 1939 Miscellaneous Docket 17, page 317. (MISCEL-LANEOUS DOCKET 19, PAGE 150)."[8] As far as the evidence shows, no person was authorized thus to alter the judgments and records of the court of common pleas, which could only be changed by a proper order and decree of that court. None was had in the instant case. The appellants challenge the jurisdiction of the court of common pleas to make, without notice, the order that it did.

No act of assembly has been called to our attention authorizing the court of common pleas, on ex parte petition of the county treasurer, without notice to parties affected, to make a decree such as this. No authority is cited that the period of redemption of five years may be converted into a redemption period of two years by such an order made without notice, especially where, as here, the two year period expired before the order was made.

---

[7] According to the deed as read into the record, N. T. 80.
[8] N. T. 88.

Before this question is determined, testimony should be taken to show when Patterson, Trustee, made his bid for the property at tax sale, and whether he paid the bid at or about the time the property was knocked down to him, and if not, when the bid was actually paid. He should produce the check he gave to the county treasurer and the treasurer's receipt. He should also show whose money was used to pay the bid.

Section 11 of the Act of 1931, P. L. 280, 72 PS §5971k, requires the county treasurer to keep in his office a book in which "he shall enter all collections of taxes made by him, and the sales made by him, . . ., the time of sale; and the price at which sold, together with the amount of the taxes, interest, and costs." Therefore a full explanation should also be had from the county treasurer and the books and records of his office should be placed in evidence.

Appellants further contend that because of actual or constructive fraud, Patterson, Trustee, could not retain the premises which he claims to have acquired at the tax sale. On this branch of the case it appeared that Carl Crawford, attorney at law, had been a co-administrator of the Delia Porter estate, and after his final account he acted as an agent of the heirs and collected the rents derived from the homestead. There was ample evidence to sustain a finding that Crawford had more than sufficient rent monies in his hands to pay and discharge the taxes, but that he did not do so. The evidence does not disclose what became of the money.

Because of this misconduct of Crawford the real estate was sold for delinquent taxes by the county treasurer.

If Crawford had the rent money to discharge the taxes and misused or misapplied the funds, it is apparent that he could not purchase and hold the real estate sold by the county treasurer; since such tax sale was occasioned by his own improper conduct. Likewise it is

apparent that his wife, Fannie Crawford, could not. Nor could any person acting for or on behalf of either of them thus obtain the benefits. from Crawford's own delinquency.

Therefore Patterson, as a trustee for Fannie Crawford, could not purchase this property for her, she being the cestui qui trustent to the extent of a life estate, and as such entitled to all the rents, issues and profits derived from the property sold for taxes because of her husband's improper conduct.

The court did not make findings as to fraud, actual or constructive, nor did it find as a fact any of the foregoing matters, which appear without contradiction in the testimony. The court held that Patterson, Trustee, having a lien against a two-thirds undivided interest in the real estate sold at tax sale, had a right to purchase and protect that lien, regardless of the fraud and misconduct of Crawford. With this position we do not agree.

When Patterson learned that the taxes were delinquent he could have redeemed the two-thirds undivided interest and filed a certificate for an additional lien: *Dierken et al. v. Shultz et al.*, 159 Pa. Superior Ct. 173, 48 A. 2d 43. See also *Lohr's Estate*, 132 Pa. Superior Ct. 125, 200 A. 135.[9] Under the guise of protecting a lien, actual or constructive fraud cannot thus be validated, and we must therefore reverse.

The evidence shows that both Patterson and Crawford were lawyers, the latter being the husband of Patterson's principal cestui qui trustent. Crawford and his

---

[9] See §9 (Par. 3) of the Act of 1931, P. L. 280, as amended, 72 PS §5971i. See also Act of 1917, P. L. 270, 72 PS §§5968, 5969; Act of 1929, P. L. 776, No. 326, 72 PS §5661 (repealed and reënacted by §12 of the Act of 1945, P. L. 1050, 72 PS §5511.12); §15 of the Act of 1931, P. L. 280, as amended, 72 PS §5971o; §16 of the Act of 1931, P. L. 280, as amended, 72 PS §5971p; and *Roth Appeal*, 159 Pa. Superior Ct. 145, 47 A. 2d 716.

wife and Patterson apparently all lived in Waynesburg, the county seat, which has a population of 4,900; and it would seem unusual that Patterson did not know that Crawford was collecting the rents as agent for the heirs. One would suppose that when Patterson found that the very land upon which he, as trustee, had a lien on a two-thirds interest, was to be sold for taxes, he would have consulted with Crawford (either as Fannie Crawford's husband or as the renting agent) to ascertain why the taxes were not paid. It seems strange that the plaintiff trustee did not go to the heirs or communicate with them regarding the unpaid taxes which impaired his lien. The testimony is that the heirs did not know of the sale, and that Crawford had assured them that he had been paying the taxes out of the rents.

Carl Crawford was living during all of these events and until August, 1947. The plaintiff trustee obtained the tax deed in May, 1939, but did not record it until October, 1946. During this interval the rents were paid to the trustee or Fannie Crawford, but none of the taxes accruing since the tax sale were paid, although apparently at least the trust res is liable therefor. Cf. *Reilly Township School District v. Pardee et al.*, 362 Pa. 283, 66 A. 2d 233.

The plaintiff and his cestui qui trustent, Fannie Crawford, should make a full explanation, and from their records show the exact amount of rents collected by either of them, and how they were applied.

Great latitude should be allowed in the introduction of evidence disclosing fraud: *Commonwealth ex rel. Saunders v. Saunders*, 155 Pa. Superior Ct. 393, 38 A. 2d 730; *Rubinsky v. Kosh et al.*, 301 Pa. 35, 151 A. 676; *Hart, Schaffner & Marx v. Koch*, 107 Pa. Superior Ct. 528, 164 A. 369.

The decree is reversed with a procedendo.